The ARCHITECTS COLLABORATIVE, INC., Plaintiff,

v.

The PRESIDENT AND TRUSTEES OF BATES COLLEGE, Defendants.

Civ. No. 83–0286 P.

United States District Court, D. Maine.

Dec. 7, 1983.

Peter S. Plumb, Thomas C. Newman, Murray, Plumb & Murray, Portland, Me., for plaintiff.

John Cole, Lewiston, Me., for defendants.

## MEMORANDUM & ORDER

GENE CARTER, District Judge.

This matter comes before the Court for a decision on the petition of the Architects Collaborative, Inc. ("Architect") for an Order Compelling Arbitration, under 9 U.S.C. § 4, of certain disputes between the Architect and the President and Trustees of Bates College ("Owner"). Those issues arise in connection with performance of the Architect's duties under an agreement dated November 25, 1977, entered into between the Owner and the Architect by which the Architect agreed to provide a design for a new physical education building to be built on the Owner's premises at Lewiston, Maine. The services required of the Architect were provided in due course and the building was constructed. Subsequently, the Owner complained to the Architect that the roof and walls of the building leaked and on August 2, 1983, filed a suit in the Maine Superior Court in and for

the County of Androscoggin, seeking damages from the Architect; the Salter Corporation, the general contractor on the building; Roof Systems, Inc., the roofing subcontractor; and Georgia-Pacific Corporation, the manufacturer of the roof coating material utilized.

The Complaint asserts in Count I a claim against the Architect based upon alleged negligence in the design of the roof and in the selection of materials to be utilized in the construction of the roof. In Count II the Owner asserts a claim against the Architect based upon alleged breach of the written contract between the Owner and the Architect.

In Counts II through VII the Owner asserts claims on various legal theories against the general contractor for damages resulting from alleged defects in the roof. Claims are asserted in Counts VIII through XI against the roofing subcontractor and in Counts XII and XIII against the supplier of the roof coating material for the same damages.

On August 26, 1983, the Architect filed a demand for arbitration of the dispute between the Owner and the Architect raised by the state court lawsuit. That demand was made pursuant to Article 11.1 of the contract between the Owner and Architect which provides:

> 11.1 All claims, disputes and other matters in question between the parties to this Agreement, arising out of, or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.

The Owner has refused to submit the dispute to arbitration and here objects to the issuance of an order compelling such arbitration of the dispute on the grounds that (1) "[t]his Court lacks jurisdiction to entertain the instant petition seeking an order compelling arbitration that jurisdiction having been reserved exclusively to the State Courts of the Commonwealth of Massachu-

setts by agreement of the parties," Respondent's Brief at 2–3, and (2) "[e]ven if this Court has jurisdiction to compel arbitration, considerations of fundamental fairness and judicial economy requires [sic] denial of the petition." *Id.* at 6.

After study of the pleadings herein, which include the Complaint of the Owner in the state action, and of the written submissions of the parties, and after having heard oral argument of counsel, the Court concludes that this Court has jurisdiction over the subject matter of this action by virtue of the diversity of citizenship between Petitioner and Respondent, as required by 28 U.S.C. § 1332, and by virtue of the United States Arbitration Act, 9 U.S.C. § 1, *et seq.*, and that the contractual agreement at issue herein provided for arbitration of a controversy involving substantial commerce between the states, as contemplated by Title 9 of the United States Code.

The Court additionally finds:

(1) That Article 11 of the contract requires the parties to arbitrate all disputes arising out of the contract, including, without limitation, any dispute pertaining to the services provided by the Petitioner under the contract.

(2) The Respondent has commenced an action in the Superior Court in and for Androscoggin County, Maine, entitled "The President and Trustees of Bates College v. The Architects Collaborative, Inc., Salter Corporation, Roof Systems, Inc., and Georgia-Pacific Corporation," in which damages of Five Hundred Thousand Dollars ($500,000.00) are sought to be recovered from Petitioner on each of two counts, said claims arising out of the performance by Petitioner of services pursuant to its contract with the Respondent.

(3) On August 26, 1983, Petitioner filed a demand for arbitration with the American Arbitration Association. Respondent has refused to submit the dispute to arbitration.

(4) Petitioner is entitled, and herein seeks, to enforce Article 11 of the contract

against the Respondent. The Petitioner is ready, willing and able to proceed with arbitration in accordance with the contract.

## II. DISCUSSION

The Respondents' jurisdictional argument is based upon their construction of the Massachusetts Arbitration Act, Mass. Gen.Laws Ann., ch. 251, §§ 1–19. This argument begins with the correct assertions that the agreement between the Owner and Architect specifically provides in Article 11 that the agreement to arbitrate "shall be specifically enforceable under the prevailing arbitration law" and that the contractual choice of law provision set out in Article 13 of said contract provides that "this agreement shall be governed by the law of the principal place of business of the Architect". It is undisputed that the Architect's principal place of business is Cambridge, Massachusetts. Thus, Respondents say the rights of the parties to arbitration are strictly confined by the requirements of the Massachusetts Act. They rely particularly on §§ 2(a) and 16 of the Massachusetts Act which provide:

§ 2

(a) Refusal to arbitrate; application to superior court

A party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement described in section one may apply to the superior court for an order directing the parties to proceed to arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration; otherwise, the application shall be denied.

§ 16 Court; jurisdiction

The term "court" means any court of competent jurisdiction *of this state.* The making of an agreement described in section one providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder.

(Emphasis added.)

The conclusion urged upon this Court is that because the arbitration provision contemplates specific enforcement of arbitration under the Massachusetts Arbitration Act, jurisdiction to enforce arbitration rests exclusively in a court of the Commonwealth. It is therefore asserted that this Court may not enforce arbitration under the contract since it is not a court of the Commonwealth.

■■■ This argument fails because the construction urged of the Massachusetts Act is simply not tenable. The surest guide to proper interpretation of statutory language is the plain meaning of the language used, which meaning should be departed from only where its literal application is at variance with legislative intent as revealed by the statute as a whole and its legislative history. *Joint Tribal Council of the Passamaquoddy Tribe v. Morton,* 388 F.Supp. 649, 656 (D.Me.), *aff'd,* 528 F.2d 370 (1st Cir.1975). *See also State of Maine v. Goldschmidt,* 494 F.Supp. 93, 99, n. 9 (D.Me.1980); *United States v. New England Coal & Coke Co.,* 318 F.2d 138, 142–43 (1st Cir.1963); 2A C. Sands, *Sutherland Statutory Construction* § 46.01 (4th ed. 1973). Here, the operative word of § 2(a) is the word "may." Because of the use of the permissive case it is unquestionably clear that the statutory language here in issue simply provides that a person aggrieved by a refusal to arbitrate is permitted to seek enforcement of the obligation to arbitrate in the courts of the Commonwealth. The intent of the statutory language is obviously to vest the Commonwealth's courts with such enforcement jurisdiction. Nowhere in § 2(a), nor elsewhere in the Act, is there displayed any intent whatever to limit an aggrieved party in seeking the assistance of any other forum that may be available to grant the same or similar relief.[1] Accordingly, the

---

1. This construction of the Massachusetts Act obviates any need to consider the question of

Court rejects the Respondent's contention that the Massachusetts Act deprives this Court of jurisdiction over the pending petition.

■ The Respondent further argues that if this Court has jurisdiction over the pending petition, it should decline, on equitable grounds, to enforce the arbitration provision of the agreement between the Architect and the Owner. The respondent points principally to the facts that (1) there are multiple parties involved in the litigation now pending in the state court which underlies this petition; (2) there are multiple claims among the various parties to that litigation; (3) other parties to the disputes which are the subject of the state litigation have no contractual commitment to participate in arbitration proceedings between the Architect and the Owner; and (4) they may not be compelled to do so. Indeed, it appears that either the Architect or the Owner could, under the language of the arbitration clause in issue in this proceeding, object successfully to the joinder of other parties to the arbitration proceeding.[2] In such circumstances the Respondent argues that the Owner's interest in obtaining resolution of all claims arising out of the construction of the facility in issue in a single proceeding and the unavailability of such relief in the course of an arbitration proceeding between the Architect and the Owner create an equitable basis for the Court to decline to enforce the arbitration provision of the subject contract, even in the face of the clear mandate of the Federal Arbitration Act.

The United States Supreme Court has had recent occasion to determine the purpose and intent of Congress in enacting that statutory provision. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Court there noted, "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.*, at ——, 103 S.Ct. at 940, 74 L.Ed.2d at 784. The Court there held that a stay entered by a district court of proceedings seeking enforcement of an arbitration provision under 9 U.S.C. § 4 "frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Id.* The Court found in § 2 of the Act a congressional declaration of "a liberal federal policy favoring arbitration agreements, *notwithstanding any state substantive or procedural policies to the contrary.*" *Id.*, at ——, 103 S.Ct. at 941, 74 L.Ed.2d at 785. (Emphasis added.) Noting the consistent history of the circuit courts in favoring arbitration under the Act, the Court agreed with that decisional policy, stating:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id.* The Court then went on to note the test to be applied in determining whether or not arbitration should be required under

---

whether, if it intended to do so, a state legislative body could oust the federal courts of jurisdiction expressly conferred on them by 9 U.S.C. §§ 1, *et seq.* where contracts containing arbitration clauses relate to business within the scope of the Act. The United States Supreme Court has recently stated:

> Section 2 [of the Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements, *notwithstanding any state substantive or procedural policies to the contrary.* The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, —— U.S. ——, ——, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983) (emphasis added).

2. The arbitration provision of the contract (Article 11.1) provides in part:

> [N]o arbitration, arising out of, or relating to this Agreement, shall include, by consolidation, joinder or in any other manner, any additional party not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by all the parties hereto.

an appropriate arbitration provision. It stated:

> But we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice ... to justify the *surrender* of that jurisdiction.

*Id.*, at ——, 103 S.Ct. at 942, 74 L.Ed.2d at 786 (emphasis in original).

In the present case the Respondent, as Owner, has clearly and without equivocation contracted as part of his agreement with the Architect to submit to arbitration all disputes which shall arise under the contract between them. Respondent did so in the context of an agreement for the construction of the facility in which it knew that numerous other individuals or firms would be involved pursuant to entirely separate agreements and undertakings. It was entirely foreseeable that the implementation of the arbitration clause of the agreement between the Architect and the Owner would require the determination of claims that arose between them in a forum entirely separate from those which might be available for resolution of claims arising between the Owner and others involved in the construction of the facility. The existing situation is a result that must be deemed to have been clearly within the contemplation of the parties to this agreement. All of the difficulties and exigencies now complained of by the Respondent as resulting from a separate and independent determination of the issues between the Owner and the Architect by arbitration are the entirely foreseeable and natural consequences of the agreement. Respondent has advanced no equitable consideration arising out of those circumstances which justifies, in equity or otherwise, overriding the clear and unambiguous intent of the parties and the achievement of the important federal policy mandated by the Federal Arbitration Act.

Accordingly, it is ORDERED that all disputes and issues which arise in connection with the performance of the Architect's duties under the agreement with the Owner dated November 25, 1977, be submitted to arbitration in accordance with the provisions of said agreement and that said arbitration proceed in the manner provided for in said contract; and it is

FURTHER ORDERED that the Respondents be, and are hereby, ENJOINED from going forward with any legal proceedings for the resolution of such disputes and issues in any forum or by any procedure that is not in accord with the provisions of said contract.

So ORDERED.